AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF PENNSYLV.

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| RONALD J. OSHENSKY, JR. | ) | Case No. |
| | ) | 20-67 J |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  December 10, 2019  in the county of  Cambria  in the
  Western  District of  Pennsylvania , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 2252(a)(4)(B) | Possession of Materials Depicting the Sexual Exploitation of a Minor |

This criminal complaint is based on these facts:
See Attached.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Robert E. Connelly, II, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1 April 2020

_____
*Judge's signature*

City and state:  Johnstown, Pennsylvania   KEITH A. PESTO, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case Number: 20-67 J |
| v. ) | |
| ) | |
| RONALD J. OSHENSKY, JR., ) | |
| ) | |
| <u>              Defendant.              </u> ) | |

**FACTS IN SUPPORT OF THE CRIMINAL COMPLAINT (CONTINUATION SHEET)**

1. This Affidavit is submitted in support of a criminal complaint charging RONALD J. OSHENSKY, JR., with one count of Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2252(a)(4)(B) (the "TARGET OFFENSE").

2. Your affiant is a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Pittsburgh, Pennsylvania Office. I have been so employed since November 2001. As part of my duties, I investigate criminal violations relating to high technology crime, cyber-crime, child exploitation and child pornography including violations pertaining to the illegal distribution, receipt, possession, and production of materials depicting the sexual exploitation of children in violation of Title 18, United States Code, Sections 2251, 2252(a)(1), 2252(a)(2), and 2252(a)(4)(B). I have received training in conducting child pornography and child exploitation investigations, have personally conducted such investigations, executed search warrants that relate to such investigations, and observed and reviewed sexually exploitive materials depicting minors in a variety of electronic media.

3. The facts set forth in this Affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other

individuals, including other law enforcement personnel and computer forensic examiners, review of documents and records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

4. Because this Affidavit is being submitted for the purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that RONALD J. OSHENSKY, JR. committed the TARGET OFFENSE.

**DEFINITIONS**

5. The following definitions apply to this Affidavit:

   a. "Minor," as defined in 18 U.S.C. § 2256(1), means any person under the age of 18 years.

   b. "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in "sexually explicit conduct," as that term is defined in 18 U.S.C. § 2256(2).

   c. "Visual depictions" include undeveloped film and videotape, data stored on computer disk or by electronic means, which is capable of conversion into a visual image,

and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. See 18 U.S.C. § 2256(5).

    d.    "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any persons. See 18 U.S.C. § 2256(2).

    e.    "Internet Service Providers" or "ISPs" are commercial organizations that provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports. Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox, and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

    f.    "IP Address," meaning, the Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g.,

121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. "Internet," a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

6. On December 10, 2019, Johnstown Police Department Detective Cory Adams was contacted by Witness 1 (hereinafter, "W1"[1]). W1 stated that earlier that day, he/she was inside OSHENSKY's residence, which is located in Johnstown, Cambria County, Pennsylvania, to gather some belongings for an individual who formerly lived with OSHENSKY.

7. W1 advised Detective Adams, that, when he/she was at OSHENSKY's residence, Witness 2 (hereinafter referred to as "W2"[2]) met him/her and told him/her that he/she needed to see something. W1 said that he/she followed W2 into OSHENSKY's bedroom where W2 handed him/her a VHS videocassette that W2 had found in OSHENSKY's bedroom trash can. The videocassette had the tape pulled out of it. W2 told W1 to view the tape. W1 did so.

8. W1 advised Detective Adams that the tape contained a video of an individual whom W1 believed to be OSHENSKY sexually assaulting a prepubescent male child.

---

[1] Detective Adams and your affiant are aware of OS's identity. OS's name has been intentionally omitted from this Complaint in order to protect OS's identity.

[2] Detective Adams and your affiant are aware of MW1's identity. MW1's name has been intentionally omitted from this Complaint in order to protect MW1's identity.

According to W1, W1 recognized the location of the recorded assault as OSHENSKY's bedroom based on the layout and furniture. W1 provided the tape to Detective Adams. Detective Adams reviewed the tape and noted that it showed a male's hand sexually assaulting (masturbating) a young boy's penis.

9. Your affiant has also reviewed this video and observed the same content.

10. The beginning of the video depicts two boys, approximately 5 to 8 years of age, playing with a baseball bat in OSHENSKY's yard. In the bottom right hand corner of the screen there appears a chyron reading "HELLO!" (capitalization and punctuation in original). After a few seconds the video cuts to the scene in the bedroom of the adult male assaulting the sleeping, prepubescent boy wearing green shorts and a green shirt. The chyron reading "HELLO!" appears on the bottom right hand corner of the screen during this scene, as well.

11. You affiant believes the victim of the sexual assault to be one of the two boys seen playing in OSHENSKY's yard at the beginning of the video based on the boy' size, approximate age, and on the fact that the victim of the assault appears to be wearing the same clothes as the boy at the beginning of video (green shorts, green shirt).

12. Upon discovery of this VHS tape depicting the sexual assault of a child, Detective Adams applied for and was issued a search warrant for OSHENSKY's residence.

13. During the search, officers recovered, among other items, a Sony Video Camera Recorder. The camera and other evidence was placed into secure storage at the Johnstown Police Department.

14. On March 24, 2020, your affiant applied for and was issued a federal search warrant authorizing review of the electronic items seized from OSHENSKY's residence by the Johnstown Police.

15. Your affiant has reviewed the Sony Video Camera and noted that, upon activating the camera and looking through the viewfinder, in the bottom right hand corner of the frame there appears a chyron reading "HELLO!", in what appears to be the same digital font with the same capitalization and punctuation scheme as the chyron on the VHS video of the sexual assault of the young boy (all caps with an exclamation point).

16. The bottom of the camera indicates that the device was made in China.

17. However, the Sony Video Camera appears to only have the capability to record to VHS-C (VHS Compact) tape, a smaller cassette than the standard VHS tape.

18. On March 31, 2020, your affiant conducted an interview with W2. W2 indicated that he/she resided with OSHENSKY at OSHENSKY's residence from approximately July 5, 2011 to June 2019. W2 stated that, during the entire period during which he/she lived with OSHENSKY, he/she knew OSHENSKY to only own a VHS-C recorder, not a regular VHS video camera. W2 also stated that the VHS-C recorder seized by JPD officers during the search of OSHENSKY's residence was the VHS-C recorder he/she knew OSHENSKY to own and use.

19. W2 further explained that OSHENSKY owned a VCR/DVD combination player, which OSHENSKY would use to convert VHS-C recordings to regular VHS tapes.

20. W2 also explained that, during the time he/she lived with OSHENSKY he/she had previously seen the videotape he/she provided to W1 inside a lockbox in OSHENSKY's bedroom. W2 further advised that, from 2011 to the time OSHENSKY was arrested in 2019, OSHENSKY was the only competent adult who lived at the residence and that OSHENSKY did not share his bedroom with any other adult.

21. As part of this investigation, investigators have examined the VHS tape itself. The VHS tape is a plain, black plastic video tape with no stickers.

22. Investigators researched the manufacturing locations (country/state) of 26 separate VHS videocassette manufacturers. None of the manufacturers produced VHS tapes in the Commonwealth of Pennsylvania.

## CONCLUSION

23. Based on the foregoing, your Affiant respectfully submits that there is probable cause to find that RONALD J. OSHENSKY, JR., committed the TARGET OFFENSE; that is, violation of federal law including, Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of Title 18, United States Code, Section 2252(a)(4)(B).