IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLAVNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:20-CR-10 |
| ) | |
| RONALD J. OSHENSKY ) | |
| ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

AND NOW, comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Arnold P. Bernard, Jr., Assistant United States Attorney for said District, and submits this Sentencing Memorandum to the Court:

**I.   INTRODUCTION**

*"The child is both a hope and a promise for mankind." – Maria Montessori, Education and Peace (1949)*

From 2009 to 2016, Ronald J. Oshensky served as a foster parent, ostensibly housing and caring for children placed with him by area child services agencies (collectively referred to as "Children and Youth Services" or "CYS"). The CYS agencies placed these children in Mr. Oshensky's custody because they deemed their temporary removal from the custody of their parents to be "in the best interest" of the children, whether due to their parents' drug use or the suspicion of abuse or neglect. Records show that during his tenure as a foster parent, Mr. Oshensky received temporary custody of over 20 of the area's most vulnerable children. To outsiders in Johnstown passing by Mr. Oshensky's quiet Birch Ave. home, it appeared as if Mr. Oshensky, at great personal sacrifice, provided much needed care and sanctuary to abused and neglected children born into dangerous and hostile environments. However, inside the residence, something much more sinister occurred.

Mr. Oshensky's horrific actions first came to light in October 2017 when an eleven-year-old boy who had been placed in Mr. Oshensky's custody (and later adopted by Mr. Oshensky)

1

informed police that Mr. Oshensky had been sexually abusing him since he was six years old. Mr. Oshensky initially denied the boy's allegations and for nearly two years, police filed no charges against Mr. Oshensky due to a lack of sufficient evidence. Mr. Oshensky finally confessed to fondling the boys' genitals and to performing oral sex on the boy after failing a polygraph examination as part of a CYS-mandated sexual abuse program.

Mr. Oshsenky was charged in the Court of Common Pleas for Cambria County, Pennsylvania with Indecent Assault against a Person Less than 13 years of age and other charges. He posted bond and was released from custody.

While these charges were pending, one of Mr. Oshensky's other former legal wards (who had reached adulthood and returned to live with Mr. Oshensky at his Birch Ave. home) discovered a VHS videotape with the tape pulled out of it in Mr. Oshensky's bedroom trash can. The legal ward provided the tape to his aunt (Mr. Oshensky's sister who was caring for Mr. Oshensky's other legal ward (then a minor) and who was present at Mr. Oshensky's residence to obtain some personal items for Mr. Oshensky's cognitively impaired sister, whom she was also caring for). Mr. Oshensky's sister repaired the tape and viewed it. The video depicted an adult male sexually assaulting a young boy in what appeared to be Mr. Oshensky's bedroom.

Mortified by the discovery, Mr. Oshensky's sister contacted the Johnstown Police and provided the tape to them. Pursuant to a warrant, Johnstown Police Officers searched Mr. Oshensky's home for additional child sexual abuse material ("CSAM") and, based on Mr. Oshensky's sister's belief that the perpetrator of the sexual abuse depicted on the tape was Mr. Oshensky (based on her view of the perpetrator's hand and the fact that the abuse appeared to occur in Mr. Oshensky's bedroom), Johnstown Police filed charges against Mr. Oshensky for Photographing/Filming a Sex Act involving a Minor.

Sometime after the discovery of the videotape, the Cambria County District Attorney's Office consulted with agents from the Department of Homeland Security – Homeland Security Investigations ("HSI"). It was then that the federal investigation into Mr. Oshensky's behavior kicked off in earnest. HSI agents conducted follow-up interviews with Mr. Oshensky's sister and the legal ward who found the videotape. They learned that Mr. Oshensky kept numerous boxes of VHS videotapes in the attic—an area of the residence that was not previously searched by Johnstown Police. HSI agents applied for a federal warrant to search Mr. Oshenksy's residence a second time.

During their search, HSI agents found several other videotapes in Mr. Oshensky's attic, one of which was found to contain additional CSAM. Specifically, this second videotape contained sixteen unique video clips of sexual abuse perpetrated against sleeping prepubescent males. Between the two videotapes, agents discovered a total of approximately 50 minutes of sexual abuse perpetrated against seven different prepubescent boys.

In totality, the investigation which led to the charges in this case revealed a shocking pattern of sexual abuse and sexual exploitation of minors. Through review of CYS records, investigators learned that Mr. Oshensky provided care specifically for prepubescent males, evidencing, perhaps, Mr. Oshensky's preferred type of child victim. They also found, through interviews, that Mr. Oshensky administered doses of melatonin to the children placed in his care to get the children to fall asleep. In every video clip depicting the sexual abuse of minors by Mr. Oshensky (one clip of which clearly shows Mr. Oshensky's face), the sexual abuse appears to occur in Mr. Oshensky's bedroom while the boys are asleep. Investigators tracked down and interviewed the minor victims they believed to be depicted in the video clips (and others who were placed in his care). However,

because the victims of Mr. Oshensky's sexual abuse were sleeping at the time the abuse occurred, many of these victims were unaware of the fact that they had been abused by Mr. Oshensky.

The facts which support the charge to which Mr. Oshensky pleaded guilty in this case paint a terrifying picture of predatory paraphilic behavior the full scope of which may never be known. The prolific pattern of sexual abuse against minors perpetrated by Mr. Oshensky is heretofore unparalleled in the experience of undersigned counsel.

Therefore, based on the seriousness of the offense committed by Mr. Oshensky, the fact that Mr. Oshensky's monstrous behavior evidences that he poses a clear danger to the community, and the other 3553(a) factors (discussed below), the United States respectfully requests that the Court impose a guideline range sentence, consistent with the terms of the 11(c)(1)(C) provision agreed to by Mr. Oshensky, of 360 months' imprisonment to be followed by lifetime term of supervised release.

**THE SENTENCING GUIDELINES RANGE**

The United States Supreme Court has instructed that "district courts must begin their [sentencing] analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Peugh v. United States, 133 S.Ct. 20172, 2083 (2013) (quoting Gall v. United States, 522 U.S. 38, 49 (2007)).  Sentencing decisions are to be "anchored by the Guidelines," and appellate courts may presume that guideline sentences are reasonable. Peugh, 133 S.Ct. at 2083. When considering a sentence outside of the Guideline Range, the Court "must consider the extent of the deviation and ensure that the justification *is sufficiently compelling* to support the degree of the variance." Id. (citing Gall, 522 U.S. at 50) (emphasis added).  "For even though the Guidelines are advisory rather than mandatory, they are … the product of careful study based on

extensive empirical evidence derived from the review of thousands of individual sentencing decisions." Gall, 522 U.S. at 47 (citing Rita v. United States, 551 U.S. 338, 349 (2007).

## II.  SECTION 3553 FACTORS

The factors listed in Title 18, United States Code, Section 3553 direct the sentencing decision to be made in this case. The Government offers its position as to each factor below:

**(1) 18 U.S.C. § 3553(a)(1) – The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

As set forth in the Offense Conduct section of the Presentence Investigation Report, and described above, the nature and circumstances of this offense are among the most heinous ever encountered by undersigned counsel. Mr. Oshensky engaged in a pattern of predation against the area's most vulnerable victims—innocent children who had been removed from dangerous living environments and placed with Mr. Oshensky, who was to provide a respite from the abuse and neglect they suffered. If not for the courage of Mr. Oshensky's adopted son, who will forever bear the psychological scars of Mr. Oshensky's abuse (as discussed in the victim impact statement provided to the Court), and the bravery of Mr. Oshensky's legal ward and sister, Mr. Oshensky's crime may never have been brought to light and his access to and exploitation of children would have continued unchecked. There is little more to say than has already been said about Mr. Oshensky's vile and horrific actions.

Furthermore, there is nothing about Mr. Oshensky's history and characteristics that in any way justifies or mitigates his actions. To the extent that the Court may find that his mental health struggles in some way warrants consideration of a lesser sentence than that requested by the United States, the Government avers that Mr. Oshensky's mental health issues are far outweighed by the psychological hardship and strife his actions have caused the victims of his crime. Untold lives

have forever been altered as a result of Mr. Oshensky's behavior.  Concern about Mr. Oshensky's mental health struggles pale in comparison to the damage he's caused.

For these reasons, the first 3553(a) factors support the sentence requested by the Government.

**18 U.S.C. § 3553(a)(2)(A) – The need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense**

A sentence of 360 months' imprisonment is necessary in this case to adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment.  The child victims of Mr. Oshensky's conduct will bear the effects of the trauma he inflicted for the rest of their lives.  A sentence of anything less than the statutory maximum penalty, which is what the advisory sentencing guidelines recommend, would be an insult to their suffering and a miscarriage of justice.

**(2) 18 U.S.C. § 3553(a)(2)(B) – The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct**

A sentence of 360 months' imprisonment followed by a lifetime term of supervised release is necessary to deter future criminal conduct by Mr. Oshensky and others.  Mr. Oshensky engaged in a lengthy pattern of sexually abusing prepubescent boys.  The only way to deter him from reengaging is such conduct is to incapacitate him through imprisonment for the longest period possible and to supervise his behavior thereafter.  Such a sentence will hopefully likewise deter others from preying on innocent children, particularly those made further vulnerable through foster placement.

**(3) 18 U.S.C. § 3553(a)(2)(C) – The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

Incapacitation of Mr. Oshensky through 360 months' imprisonment and supervision of him for the rest of his life thereafter is necessary to protect the public from further crimes committed by Mr. Oshensky. As mentioned previously, the prosecution of Mr. Oshensky was only possible thanks to the courage and bravery of the children and young adults who were placed in his care. If not for their actions, Mr. Oshensky could have continued to prey on vulnerable children unabated. At this point, there is nothing to suggest that Mr. Oshensky is in any way reformed or capable of reformation. Therefore, the only option to prevent Mr. Oshensky from further harming area youth is imprisonment for the maximum period permitted by law followed by court supervision for the rest of his life.

### (4) 18 U.S.C. § 3553(a)(3), (4) – The Kinds of Sentence and the Sentencing Range Established by the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines

The defendant's total offense level is 47, which is treated under the Guidelines as a level 43. His criminal history category is III. The defendant's Guideline Range is life imprisonment. However, the advisory guideline range of life is limited by the 30-year statutory maximum. Therefore, the advisory guideline range is 360 months' imprisonment. Since the applicable guideline range is in Zone D of the Sentencing Table, the minimum term must be satisfied by a sentence of imprisonment. U.S.S.G. § 5C1.1(f). Pursuant to 18 U.S.C. § 3583(k), the Court must impose a term of supervised release of at least 5 years. Pursuant to U.S.S.G. § 5D1.2(b)(2), the guideline term of supervised release is from 5 years to life.

### (5) 18 U.S.C. § 3553(a)(5) – Any Pertinent Policy Statement

There are no pertinent policy statements applicable.

### (6) 18 U.S.C. § 3553(a)(6) – The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

Thankfully, few cases present facts as abhorrent as Mr. Oshensky's. Because of the unique nature of Mr. Oshensky's atrocious conduct, consideration of any disparity between similarly-situated defendants is limited.

### (7) 18 U.S.C. § 3553(a)(7) – The Need To Provide Restitution To Any Victims Of The Offense

While restitution is applicable in this case, no requests for restitution have been submitted to the Court

### III.   CONCLUSION

WHEREFORE, driven largely by the horrific nature of Mr. Oshensky's conduct, and in light of the 3553(a) factors, the United States respectfully requests that the Court impose a sentence of 360 months' imprisonment to be followed by a lifetime term of supervised release with conditions suitable to prevent the further sexual abuse of children.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

/s/ Arnold P. Bernard, Jr.
Assistant United States Attorney
PA I.D. No. 313734